## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAYMOND EDWARD CHESTNUT, | : | CIVIL ACTION NO. 3:CV-15-1581 |
| | : | |
| Petitioner | : | (Judge Nealon) |
| | : | |
| v. | : | |
| | : | |
| WARDEN DAVID EBBERT, | : | |
| | : | |
| Respondent | : | |

### MEMORANDUM

Petitioner, Raymond Edward Chestnut, an inmate currently confined in the United States Penitentiary, Lewisburg ("USP-Lewisburg"), Pennsylvania, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. §2241.  (Doc. 1, petition). Petitioner alleges that his due process rights were violated during the course of two separate prison disciplinary hearings. Specifically, he alleges that he "requested that the video surveillance camera be reviewed and preserved for the DHO hearing to support that he did not commit the charges."  Id.  He concludes that " if the video evidence would have been reviewed and preserved it would have showed and proven that Petitioner did not assault the reporting officer and did not threaten the other officers."  Id.  For relief, Petitioner requests an order directing Respondent to

expunge both incident reports and restore Petitioner's good time credits.  Id.  The

petition is ripe for disposition and, for the reasons that follow, will be denied.

## I. Background

### A. Incident Report No. 2253031

On January 6, 2012, while confined in the Federal Correctional Institution,

Bennettsville, South Carolina, Petitioner was served with Incident Report No.

2253031 charging him with Improperly Using Emergency Device, a Code 208

violation, and Assaulting Any Person, a Code 224 violation.  (Doc. 5-1 at 9,

Incident Report).  The incident report, which was written by Senior Officer Patrick

Robinson, reads as follows:

> On 1/6/2012, I, S/O P. Robinson was assigned to the SHU as the
> Property Officer.  At approximately 8:45 AM, I, S/O Robinson was on
> C Upper Range at which time the medical distress button went off and
> I/M Chestnut # 13465-171 began to state that he had fallen and needed
> to see medical.  At this time I went to his cell and he was standing up
> without any medical issues at which time I informed him that he would
> receive an incident report for misuse of the call button.  At which time
> I and S/O/S Davis was at his cell 248.  At this time, I did tell him to
> cuff up to be seen my medical due to his prior history of false
> allegations.  Upon attempting to place I/M Chestnut in restraints he
> began to complain that the restraint on his left wrist was too tight.  At
> this time, I removed the restraint and placed it back on his wrist and
> when placing the restraint on his right wrist he pulled away
> maliciously while he grabbed onto my right hand which then resulted
> in me sustaining two lacerations to my knuckle area.  His cell mate was

2

placed in restraints and the cell door opened and I/M Chestnut was immediately escorted to a holding cell where he was seen by medical for an evaluation and SHU Lt. was notified of the incident.

Id. The matter was investigated by Lt. P Malor, and was referred to the Unit Disciplinary Committee ("UDC") for final disposition. Id. On January 8, 2012, the UDC conducted a hearing and forwarded the Incident Report to the Discipline Hearing Office ("DHO") for disposition. (Doc. 5-1 at 13).

On January 10, 2012, the DHO remanded the Incident Report back to the reporting officer for a re-write of the Incident Report, stating that "assault info needs to be in body of the IR. Statement needed about notice to inmates-duress button." (Doc. 5-1 at 12, Inmate Discipline Update Charges).

On January 12, 2012, the Incident Report charging Chestnut with the same violations was re-written and issued to Chestnut. (Doc. 5-1 at 14, Incident Report).

By Memorandum dated February 1, 2012, Warden Drew approved an extension of the disciplinary process, pursuant to Program Statement 5270.09, as the UDC was not completed within five days of staff becoming aware of the incident. (Doc. 5-1 at 13, Memorandum).

On February 3, 2012, Petitioner appeared before the Unit Discipline Committee ("UDC").  (Doc. 5-1 at 14, Part II, Committee Action).  Petitioner made the following statement to the UDC:

> I did not assault the officer.  My Due Process rights were violated.  I was not notified of an extension.  I did not receive the incident report within 24 hours, nor have I received a copy of the incident report.  Lt. did not advise me of my rights.  I request to see the camera.  I was not given UDC within 5 working days.

Id.  Based on the severity of the prohibited act, the UDC referred the charge to the Discipline Hearing Officer ("DHO"), recommending 41 days loss of GCT, 180 days loss of phone, 180 days loss of commissary, loss of visits.  Id.  During the UDC hearing, staff member, M. Holland, informed Chestnut of his rights at the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline Hearing" form. (Id. at 16, Inmate Rights at Discipline Hearing).

On February 3, 2012, Chestnut was provided with a "Notice of Discipline Hearing before the (DHO)" form.  (Doc. 5-1 at 17).  Chestnut requested to have a staff member represent him.  Id.  He did not request to call any witnesses.  Id.

On February 23, 2012, Petitioner appeared for a hearing before DHO, H. Mitchell.  (Id. at 18-21, DHO Report).  During the DHO hearing, Petitioner was

again read his rights, and he indicated that he understood them.  Id.     Petitioner

offered the following statement on his behalf:

> Inmate Chestnut said when the officer placed him in restraints he asked
> him to adjust the cuffs because it was too tight.  He said the officer did
> and then placed restraints on his room mate.  Chestnut said he had to
> move away from the door so staff could cuff his room mate and when
> he tried to move, staff jerked him back.  He said he did not assault Mr.
> Robinson.  He said he was in restraints, he could not assault him.

Id.

 In addition to the Incident Report and Investigation, the DHO also relied on

the Injury Assessment Forms. The specific evidence taken from the relied upon

documentary evidence was as follows:

> Your Due Process rights were reviewed with you by the UDC.  You
> had no documentary evidence to present, did not request any witnesses,
> and declined the services of a staff representative to assist you at the
> hearing.  You indicated to the DHO you were ready to proceed with
> the hearing.
>
> The DHO considered as evidence, the injury assessments on you and
> Mr. Robinson.  Mr. Robinson was seen by medical staff on January 6,
> 2012, at approximately 9:00 A.M., and had two superficial abrasions
> on his right hand.  You were also seen by medical staff and said your
> knees hurt where you fell when staff pulled you.  A full assessment
> was performed and you had two small scars to the left knee and they
> appeared to be in a late stage of healing.  You did not have any bruises,
> abrasions or lacerations noted to any other portion of your body.

The DHO found you committed the prohibited act of Assaulting Any Person, Code 224.

The DHO bases this decision on the facts presented in the body of the written report.  On January 6, 2012, you told Mr. Robinson you had fallen and needed to see medical.  He went to your cell and you were standing without any medical issues.  He told you that you would receive an incident report for activating the duress button. He told you to submit to restraints so you could be seen by medical staff and when he placed the cuffs on you, you said the restraint on you left wrist was too tight.  He removed the restraint and placed it back on your left wrist.  When he placed the restraint on your right wrist, you pulled away while you grabbed his right hand, causing him to receive two lacerations to his knuckle area.  You denied the charge and said the officer jerked you back.

The DHO considered your statement, but found the statement of the reporting officer to be more credible.  Specifically, Mr. Robinson said you jerked your arm away while he was placing restraints on you, causing him to receive lacerations on his knuckle.  Also, based on the injury assessment on Mr. Robinson, he had two superficial abrasions to his right hand.  This gives credence to the statement of Mr. Robinson. Although you denied the charge, the DHO believes you are denying the charge as you did not want to be held accountable for your actions. Additionally, you told the DHO that you moved away from the door so staff could put restraints on your room mate. The DHO believes you said this in hopes of getting the report expunged.  Additionally, if you had not jerked away, Mr. Robinson would not have had the injury to his knuckles.  You said you were cuffed and could not assault Mr. Robinson.  However, because of your actions, he sustained injuries to his right hand.  Also, you provided no evidence that you were not the cause of Mr. Robinson being injured.  Furthermore, staff have nothing to gain by providing a false statement.

6

You originally had Mr. Ostgard as your staff representative.  During the hearing he stated that he was involved and that he wrote a supporting memorandum regarding the incident.  You were asked to select another staff representative and you stated you did not want one.

Due to the incident report having to be rewritten, you did not receive a copy of the incident report within 24 hours of the time staff became aware of the incident.  Additionally, you did not receive your initial hearing within five work days.  The UDC did request and extension which was approved by the Warden.  You were advised of this at the hearing.

The DHO believes the written report, and the evidence presented at the hearing, provides some evidence to indicated you committed the prohibited act.

Id.  The DHO sanctioned Petitioner to disallowance of twenty-seven (27) days good conduct time and thirty (30) days disciplinary segregation.  Id.  The DHO documented his reasons for the sanctions given as follows:

Assaulting any person will not be tolerated in the correctional environment.  It can have extremely serious repercussions for both staff and inmates, since it tends to result further disruptive and violent behavior.

The sanction of disallowance of 27 days good conduct time is needed as an immediate sanction to show you that this type of offense is of a serious nature and merits serious sanctions.  The sanction of 30 days disciplinary segregation is imposed to punish you for your actions.

Code 208, Tampering with or blocking any locking device, was dropped.

Id. Chestnut was advised of his appeal rights at the conclusion of the hearing. Id.

Due to workload, the DHO report was not served on Chestnut until April 20, 2012. Id.

On May 7, 2012, Chestnut filed Administrative Remedy No. 691373-R1 with the Regional Office, appealing the DHO decision. (Doc. 5-1 at 44-71, Administrative Remedy Generalized Retrieval). On June 5, 2012, the remedy was rejected for failure to comply with procedures. Id. Petitioner resubmitted Administrative Remedy No. 691373-R2 on June 28, 2012, which was again rejected on July 11, 2012. Id. Administrative Remedy No. 691373-R3 was submitted for a third time on July 12, 2012. Id. It was denied on August 7, 2012. Id. Petitioner appealed Administrative Remedy No. 691373-A1 to the Central Office on September 4, 2012. Id. On June 11, 2013, the Central Office denied Chestnut's appeal. Id.

## B. Incident Report No. 2353199

On October 15, 2012, Petitioner was served with Incident Report No. 2353199 charging him with Threatening Another with Bodily Harm, a Code 203 violation. (Doc. 5-1 at 23, Incident Report). The incident report, which was written by Senior Officer R. Thompson, reads as follows:

> On September 17, 2012, I, OFC R. Thompson gave inmate R. Chestnut a direct order to back out the recreation cell so that I could escort him back to his cell. Chestnut turned to face me and said "You touch me

and I'll kick the shit out of you". At this time SOS T. McGirt escorted
Chestnut back to his cell without further incident.

Id.

By Memorandum dated October 19, 2012, Acting Warden M. Clark at USP-
Atlanta approved an extension of the disciplinary process, pursuant to Program
Statement 5270.09, as the UDC was not completed within five days of staff
becoming aware of the incident, due to Chestnut's transfer from FCI-Bennettsville
to USP-Atlanta.  (Doc. 5-1 at 25, Memorandum).

On October 19, 2012, Chestnut appeared before the UDC, where he claimed
that the "supporting memo is falsified information" and that the Incident Report is
"falsified also because Office McGirt did not witness this incident nor was he
present to escort [Petitioner]".  (Doc. 5-1 at 23).  Petitioner requested to review the
video.  Id.  The UDC forwarded the Incident Report to the DHO for greater
sanctions that were available at the UDC level.  Id.

During the UDC hearing, staff member, T. Whitehead, informed Chestnut of
his rights at the DHO hearing and provided him with a copy of the "Inmate Rights
at Discipline Hearing" form and a "Notice of Discipline Hearing before the (DHO)"
form.  (Doc. 5-1 at 26-27).  Chestnut did not request to have a staff member
represent him, nor did he request to call any witnesses.  Id.

On October 26, 2012, Petitioner refused to appear for a hearing before DHO,

Duane P. Donovan. (Doc. 5-1 at 31-33, DHO Report).  Two staff members signed

on the front page of the DHO Checklist, verifying Petitioner's refusal.  Id.  The

hearing was held without his appearance.  Id.

The specific evidence taken from the relied upon documentary evidence was

as follows:

> Your Due Process rights were reviewed with you by the DHO at the
> time of the hearing.  You refused to appear at the DHO hearing.  You
> declined the services of a staff representative to assist you at the
> hearing.

> The DHO found you committed the prohibited act of Assault to
> Another, Code 224.

> The DHO bases this decision on the facts presented in the body of the
> written report.

> The reporting officer wrote an incident report based on your actions in
> which you were requested by staff to back out of the recreation cell as
> to be escorted back to you assigned living quarters.  Upon request you
> turned and faced staff and stated "You touch me and I will kick the shit
> out of you."

> Your defense at the UDC was that the Incident Report is false because
> staff did not witness these actions and you request to view the camera
> footage.  You refused to cooperate and participate in the DHO hearing
> held on 10-26-2012.

> The DHO considered the information contained in the incident report,
> the DHO considered the statement of staff to be credible, assessment of
> the incident and the documentation of your actions.

> The DHO believes the written report of facts, and the evidence
> presented at the hearing, provides evidence to indicate you committed
> the prohibited act.

Id.  The DHO sanctioned Petitioner to disallowance of twenty-seven (27) days good

conduct time, twenty-one (21) days disciplinary segregation and three months loss

of email privileges.  Id.  The DHO documented his reasons for the sanctions given

as follows:

> Threatening comments and threats to assaulting of another in a
> correctional environment is dangerous to yourself as well as to staff
> and other inmates.  These actions directly violate and circumvents the
> Bureau of Prison policy and procedures for the appropriate behavior
> while incarcerated.  These actions violate policy and create a
> dangerous environment, as it is known inmates who fight and assault
> others may also conduct other prohibited acts such as introduction of
> contraband and affect escapes.  These actions hamper staff's ability to
> control his/her area of responsibility, interferes with their maintaining
> proper inmate accountability, and threatens the security of the
> institution.
>
> The sanction of disallowance of good conduct time is imposed as an
> immediate sanction to show you that this type of offense is of a serious
> nature and merits serious sanctions.  The sanction of disciplinary
> segregation is imposed to punish you for your actions.
>
> Loss of privileges are imposed as they are allowed for inmates who
> obey and abide by institution rules and regulations.  This is an attempt
> to correct your behavior while incarcerated in the Bureau of Prisons.

Id.  Chestnut was advised of his appeal rights at the conclusion of the hearing.  Id.

On March 26, 2014, a rehearing of Incident Report No. 2353199, charging

Chestnut with Threatening Another with Bodily Harm, a Code 203 violation, was

held at USP-Lewisburg.  (Doc. 5-1 at 34-38, Discipline Hearing Officer Report).

Chestnut was again informed of his rights and stated that he understood them

and was ready to proceed with the hearing.  Id.  Staff member R. Bilinski appeared

as Chestnut's staff representative.  Id.  Chestnut requested Lt. J. Edwards as a

witness in his case to present testimony to the effect of: (1) Lt. Edwards was

personally present during the incident, could verify Chestnut never threatened

anyone during the incident, and could also verify Officer McGirt was not present

during the incident, thereby supporting Chestnut's contention the memorandum of

McGirt, dated 10-8-2012, is a fabrication and (2) all Chestnut's moves "were

required to be videotaped on video disc on a handheld video camera".  Id.  Lt.

Edwards was not called to present in-person testimony during the hearing, as he is

still assigned to work at FCI-Bennettsville, where the incident occurred, whereas

the rehearing of this case was conducted at USP-Lewisburg.  Id.  A written

statement was, however, requested from Lt. Edwards prior to the rehearing of this

case.  Lt. Edward's statement, dated March 25, 2014, was "I don't recall the

incident."  (Doc. 5-1 at 41, Memorandum).  Chestnut also requested SIA Hernandez

as a witness, claiming Mr. Hernandez conducted an investigation into the incident

and determined the memorandum supplied by Officer McGirt was fabricated.  (Doc.

5-1 at 35).  Mr. Hernandez no longer works for the BOP and his statement could not

be obtained; however, the DHO indicated that if the information Chestnut provided

was true, it would have been brought to light based on the numerous administrative

remedy appeals and tort claims Chestnut had filed concerning the incident.  Id.

Chestnut did not request any additional witnesses.  Id.

In addition to the Incident Report and Investigation, the DHO also relied on a

letter presented by Chestnut, dated January 9, 2012, from staff in the Southeast

Regional Office, referencing a Freedom of Information Act request (No. 13-02419),

filed by Chestnut.  Id.  The specific evidence taken from the relied upon

documentary evidence was as follows:

> **ADMINISTRATIVE NOTE** The DHO notes that the rehearing in this
> case was conducted as a result of a civil action filed by inmate
> Chestnut in the Middle District of Pennsylvania regarding the hearing
> conducted by the DHO at USP-Atlanta on 10-26-2012.  Specifically, a
> concern was noted in that the record reflected Chestnut had requested
> video footage of the incident be reviewed as evidence in this case,
> whereas the DHO Report failed to clearly document whether the video
> footage was reviewed as evidence.  The DHO further notes delays at
> several early stages of the discipline process.  First, the date of the
> incident is recorded as 9-17-2014, at approximately 11:03 AM, as
> documented in Sections 4 and 5 of the incident report, whereas
> Sections 12 and 13 of the incident report document the incident report
> was written on 9-25-2012, at approximately 1:27 PM.  The delay in
> writing the incident report is accounted for in the record in this case, as
> the incident report was returned to be rewritten by the reporting officer
> to address other staff member(s) present during the incident, and to

obtain documentation from the staff member(s) as to their observations during the incident. Moreover, Chestnut was transferred from FCI-Bennettsville to USP-Atlanta on 9-27-2012. This resulted in the rewritten incident report being delivered to Chestnut on 10-15-2012, the investigation being completed on 10-18-2012, and the UDC being conducted on 10-19-2012. The DHO notes a memorandum dated 10-19-2012, signed by M. Clark, Acting Warden at USP-Atlanta, authorized the UDC hearing to be conducted beyond five work days, in accordance with Program Statement 5270.09, Inmate Discipline Program, for the reasons explained in the preceding sentences in this paragraph. The DHO notes inmate Chestnut did not raise any issues related to these delays during the rehearing conducted in this case. **END OF NOTE**

The DHO finds inmate Chestnut committed the prohibited act of Code 203, Threatening Bodily Harm. This finding is based upon the eyewitness written account of the reporting officer, which indicates on 9-17-2012, at approximately 11:03 AM, the reporting officer gave inmate Chestnut, #13465-171, a direct order to back out of the recreation cell, so Chestnut could be escorted back to his assigned cell. Chestnut turned to face the reporting officer and stated "You touch me and I'll kick the shit out of you". At that time SOS T. McGirt escorted inmate Chestnut back to his cell without further incident.

This finding is further based upon the memorandum of McGirt, dated 10-8-2012. Officer McGirt reports he was present on the date of the incident while inmates were being escorted back to their assigned cells from the Special Housing Unit recreation cages. Officer McGirt reports he witnessed Senior Officer R. Thompson order inmate Raymond Chestnut, #134651-171, to turn around and "cuff up" so he could be escorted back to his assigned cell. Inmate Chestnut replied "motherfucker, you touch me, and I will kick the shit out of you!" Officer McGirt further reports Chestnut was acting aggressively by grabbing the cage, and refusing to turn around for Officer Thompson. Officer McGirt reports he approached the recreation cage and ordered Chestnut to "cuff up", at which time Chestnut complied. Chestnut further complied with orders to back out of the recreation case and Officer McGirt escorted Chestnut back to his cell without further

14

incident.  Officer McGirt later asked Chestnut what the issue was with Officer Thompson, at which time Chestnut stated "I don't like that motherfucker because of some shit a long time ago!"

Chestnut denied committing any prohibited act in this case.  He presented his defense, verbal testimony and a handwritten document, a letter dated 1-9-2012, from staff in the Southeast Regional Office, referencing a Freedom of Information Act Request (No. 13-02419) filed by Chestnut.  Chestnut alleged the incident report, as well as the memorandum of McGirt, dated 10-8-2012, are both complete fabrications.  Chestnut further alleged officer McGirt was not present during the incident, and could not have been present during the incident, as he was not assigned to work in the Special Housing Unit on that date.  The letter Chestnut presented as evidence supporting his contention, dated 1-9-2012, documents Officer McGirt was assigned to work in Unit A-2 from 6:00 AM to 2:00 PM, assumedly on the date of the incident, 9-17-2012.

The DHO gives the greater weight of the evidence in this case to the eyewitness written account of the reporting officer, as well as the memorandum of McGirt, dated 10-8-2012.  This evidence indicates on 9-17-2012, at approximately, 11:03 AM, the reporting officer gave inmate Chestnut, #13465-171, a direct order to back out of the recreation cell, so Chestnut could be escorted back to his assigned cell.  Chestnut turned to face the reporting officer and stated "You touch me and I'll kick the shit out of you".  Officer McGirt further reports Chestnut was acting aggressively by grabbing the cage, and refusing to turn around for Officer Thompson.  Officer McGirt reports he approached the recreation cage and ordered Chestnut to "cuff up", at which time Chestnut complied.  Chestnut further complied with orders to back out of the recreation case, and Officer McGirt escorted Chestnut back to his cell without further incident.  Officer McGirt later asked Chestnut what the issue was with Officer Thompson, at which time Chestnut stated, "I don't like that motherfucker because of some shit a long time ago!"

The DHO has considered as evidence in this case the testimony of inmate Chestnut, in which Chestnut contends that the threatening

15

statements attributed to him in Section 11 of the incident report were completely fabricated by the reporting officer, and that the memorandum of McGirt, dated 10-8-2012, was fabricated as well.  The DHO finds this evidence to be less credible than that to which the greatest weight is give in this case, for the following reasons.  First, there were two staff eyewitnesses to the incident, each of whom submitted written statements (Section 11 of the incident report and the memorandum of McGirt, dated 10-8-2012) in which they documented observing Chestnut making the threatening statements attributed to him in Section 11 of the incident report.  Further, if Chestnut's testimony is to be believed, then the DHO would have to accept as fact that the reporting officer fabricated the Section 11 of the incident report, and that Officer McGirt fabricated his memorandum documenting his eyewitness accounts of the incident.  Staff found to have engaged in fabrication and falsification of official government documents would risk losing employment with the Federal Bureau of Prisons as a result of violating the Standards of Employee Conduct.  Therefore, the reporting officer as well as Officer McGirt have their livelihood to lose, and absolutely nothing to gain, by fabricating or falsifying the incident report and supporting memorandum in this case.  Moreover, if Chestnuts' testimony is to be believed, then the DHO would also have to accept as fact that multiple staff members engaged in some sort of conspiracy to fabricate or falsify official government documents supporting disciplinary actions in this case, as Chestnut contends.  There was simply no credible evidence presented during the hearing supporting such a conclusion.  Chestnut can certainly make such allegations in his defense, however, without some sort of credible evidence to support them, the DHO affords the allegations very little weight.  In fact, the evidence Chestnut alleges "proves" he did not or could not have committed the act charged either is contradictory, or fails to do so.  First, Chestnut alleges "all his moves were required to be recorded on video disc by a hand held video camera".  However, documentation was received from the SIS Department at FCI-Bennettsville on 3-25-2014 indicating this was not the case.  Moreover, Chestnut's contention Officer McGirt could not possibly have been present during the incident, based on his duty assignment on the date of the incident is erroneous.  Having worked in corrections in the Bureau of Prisons well in excess of 20 years, the DHO is aware

Correctional Officers are routinely reassigned to temporary duties during any given shift, as was explained to Chestnut during hearing. Simply because Officer McGirt may have been assigned to work Unit A-2, does not mean he could not have been temporarily reassigned during the shift to assist in escorting Special Housing Unit recreation, based on need.  Therefore, Officer McGirt's shift assignment, as noted on the documentary evidence presented by Chestnut during the hearing, is not evidence conclusive that he could not possibly have been present at the incident scene at the time documented in the incident report.

The DHO cannot, therefore, accept as fact that several Bureau of Prisons staff members would risk their employment with the Federal Bureau of Prisons simply to justify disciplinary action in this case, as Chestnut contends.  Inmate Chestnut, however, stands to gain by being less than completely honest regarding the facts of the incident.  More specifically, inmate Chestnut stands to avoid being sanctioned for misconduct which he knows to be both High severity level, and repetitive, in nature, and would likely result in more stringent sanctions being imposed in accordance with inmate discipline policy and progressive sanctioning philosophy.  Further, the DHO finds Chestnut's allegations that the SIA at FCI-Bennettsville conducted an investigation into the incident at the request of Chestnut, and determined the memorandum of McGirt to be a fabrication, to be completely implausible.  The DHO has determined if there was any truth to Chestnut's claims, this information would have been brought to light, and the situation remedied long before this point, based on the fact that Chestnut has filed numerous administrative remedy appeals and tort claims regarding this case, as well as civil litigation.

Finally, the DHO notes Chestnut requested video footage of the incident to be preserved and reviewed as evidence in this case, stating "the only statement I want recorded in the record is 'staff failed to act in good faith to preserve the video footage, which could have exculpated me of the charge'."  The DHO notes the first documented request for the video footage made during the investigation of the incident report on 10-18-2012, at 10:25 AM, with a second documented request being made when he appeared before the UDC on

10-19-2012.  Documentation was received from staff at FCI-Bennettsville, indicating the video footage had already been erased or recycled by the time it was initially requested by inmate Chestnut. Moreover, staff at FCI-Bennettsville confirmed no copy of any video footage related to the incident was retained, as the charges were based on a verbal threat and there is no audio component to the video camera surveillance system.  Therefore, the video footage could not have been exculpatory in nature, as Chestnut contends, as it simply is not, and was not at the time of the original hearing, available for review based on the untimely request by Chestnut.  As noted earlier, video footage produced by the security or surveillance cameras could not prove conclusively whether Chestnut did or did not commit the prohibited act charged, again, as the charge was based on a verbal threat and there is no audio component to the video camera surveillance system. Accordingly, the DHO has concluded that Chestnut's defense to the charges in this case was not impeded by the DHO's inability to view video footage as requested by inmate Chestnut, due to unavailability of the video footage based on Chestnut's untimely request for it to be preserved.

The greater weight of the evidence in this case therefore, supports the finding inmate Chestnut committed the prohibited act of Threatening Bodily Harm, Code 203.

(Doc. 5-1 at 36-38, Discipline Hearing Officer Report).  The DHO sanctioned

Petitioner to disallowance of twenty-seven (27) days good conduct time, twenty-one

(21) days disciplinary segregation (which was suspended pending 180 days of clear

conduct) and three months loss of email privileges (sanction already served from

original hearing date of 10-26-2012).  Id.  The DHO documented his reasons for the

sanctions given as follows:

Threatening others with bodily harm in a correctional institution
inherently jeopardizes the security and good order of the institution.

> The rationale for the sanctions imposed in this case, therefore, is to punish the inmate for his misconduct, which is viewed as having an adverse effect on the security and orderly operation of the institution, as well as to deter future misconduct. Disciplinary segregation is imposed as punishment for the misconduct. Disallowed Good Conduct Time is imposed to demonstrate that engaging in misconduct will prolong Chestnut's period of incarceration. Loss of e-mail privileges is imposed to demonstrate that engaging in misconduct will result in the loss of pleasurable privileges while incarcerated.

Id. Chestnut was advised of his appeal rights at the conclusion of the hearing. Id.

On May 7, 2014, Chestnut filed Administrative Remedy No. 778580-R1 with the Regional Office, appealing the DHO decision. (Doc. 5-1 at 44-71, Administrative Remedy Generalized Retrieval). On May 8, 2014, the remedy was rejected for failure to comply with procedures. Id. Rather than attempt to re-file in accordance with procedure, Chestnut filed Administrative Remedy No. 778580-A1 in the Central Office on October 20, 2014. Id. On December 19, 2014, Administrative Remedy No. 778580-A1 was rejected for being untimely and filed at the wrong level. Id. Petitioner was given the opportunity to resubmit with a memorandum excusing his delay in filing, however, he failed to do so. (Doc. 5- at 4, Declaration of Jennifer Knepper, USP-Lewisburg Attorney Advisor).

## II. **Discussion**

### A. **Exhaustion**

The BOP's Administrative Remedy Program is a three-tier process available to inmates confined in institutions operated by the BOP who "seek formal review of an issue relating to any aspect of his/her confinement." 28 C.F.R. §542.10(a).  An inmate must generally attempt to informally resolve the issue by presenting it to staff in a BP-8 form.  See 28 C.F.R. §542.13.  If the issue is not informally resolved, then the inmate may submit a request for administrative remedy (BP-9) to the Warden.  See 28 C.F.R. §542.14.  An inmate who is dissatisfied with the Warden's response may appeal to the Regional Director (BP-10), and an inmate dissatisfied with the Regional Director's decision may appeal to the General Counsel in the Central Office (BP-11).  See 28 C.F.R. §542.15(a).  Appeal to the General Counsel is the final administrative appeal. Id. The regulations further provide that the Warden shall respond within 20 calendar days; the Regional Director shall respond within 30 calendar days; and the General Counsel shall respond within 40 calendar days.  See 28 C.F.R. §542.18. Finally, the regulation provides that if the inmate does not receive a response within the time allotted for reply, then the inmate may consider the absence of a response to be a denial at that level.  Id.

Although 28 U.S.C. §2241 contains no exhaustion requirement, "[o]rdinarily, federal prisoners are required to exhaust their administrative remedies prior to

seeking a writ of habeas corpus pursuant to 28 U.S.C. §2241." Gambino v. Morris, 134 F.3d 156, 171 (3d Cir.1998); see also, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir.2000); Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir.1981). The United States Court of Appeals for the Third Circuit requires administrative exhaustion of a claim raised under §2241 for three reasons: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761-62 (3d Cir.1996); see also Gambino, 134 F.3d at 171; Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir.1988).

While the record demonstrates, and Respondents concede, that Chestnut has exhausted his administrative remedies with Respect to Incident Report No. 2253031,  it is clear that he has failed to properly exhausted his administrative remedies with respect to Incident Report No. 2353199.  The record demonstrates that Incident Report No. 2353199 was rejected at the Regional Administrative Remedy level, with advisement that Petitioner could resubmit his appeal, once he complied with the directives contained therein.  Petitioner, however, failed to comply, and, instead, filed an appeal to the Central Office instead, which was

rejected as untimely and improperly filed.  Although Chestnut was granted additional time to again comply with procedure and re-file his appeal at the Regional level, he failed to do.  Thus, he stopped the appeal process before completion and failed to appeal the BOP General Counsel for final administrative review.  As such, he has failed to exhaust the administrative remedy process.

If a federal prisoner is not in compliance with §542.10 then the habeas petition should be denied. Arias v. U.S. Parole Comm'n, 648 F.2d 196, 199 (3d Cir.1981).  However, under limited circumstances, a prisoner may not be required to exhaust the administrative remedies.  A prisoner's failure to exhaust may be excused if he can show that there is no opportunity to obtain adequate redress, or that the issue the prisoner presents only pertains to statutory construction, if the prisoner can affirmatively show that the pursuit of the administrative remedy would be futile. Gambino v. Morris, 134 F.3d 156, 171 (3d Cir.1998); Schandelmeier v. Cunningham, 819 F.2d 52, 53 (3d Cir.1986); Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d. Cir.1981). The Petitioner here has not shown that his situation meets the above mentioned exceptions. Thus, Petitioner is not entitled to be excused from exhaustion in this matter.  As such, only the merits of Incident Report No. 2253031, which has been properly exhausted, will be addressed.

**B.**    **Merits**

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law.  Torres v. Fauver, 292 F.3d 141 (3d Cir.2002).  It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply."  Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time.  Id.  Since Petitioner's sanctions did include the loss of good conduct time, Petitioner has identified a liberty interest in this matter.

In Wolff, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action.  Wolff, 418 U.S. at 563-67.  The Supreme Court has held that the standard

of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent v. Hill, 472 U.S. 445-46 (1985); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir.1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. Hill, 472 U.S. at 457.

Chestnut's disciplinary hearing was held in February 2012. The applicable Bureau of Prisons' inmate disciplinary procedures for this time frame are codified at 28 C.F.R. §541, et seq., and entitled, Inmate Discipline and Special Housing Units. These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. See Von Kahl v. Brennan, 855 F.Supp. 1413, 1418 (M.D.Pa.1994). Pursuant to these regulations, staff shall prepare an Incident Report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. §541.5. The incident is then referred to the UDC for an initial hearing pursuant to 28 C.F.R. §541.7. The UDC hearing is ordinarily held within five work days after the incident report was issued, not counting the day it was issued, weekends and holidays. See 28 C.F.R. §541.7(c). If the UDC finds that a prisoner has committed a prohibited act, it may impose minor

sanctions.  28 C.F.R. §541.7(f).   If the alleged violation is serious and warrants

consideration for more than minor sanctions, or involves a prohibited act listed in

the greatest severity category, the UDC must refer the matter to a disciplinary

hearing officer for a hearing.  28 C.F.R. §541.7(g).  The DHO shall give the inmate

a written copy of the decision following its review of the incident report.  28 C.F.R.

§541.7(h).

In the instant case it is clear that Chestnut was afforded all of the required

procedural rights set forth in Wolff.  He received timely notice of the incident

report, as well as the re-write.  He was properly informed of his rights before the

hearing, as well as given the opportunity to make his own statement, present

documentary evidence, have a staff representative, and to present witnesses on his

behalf.

To the extent that Petitioner argues that he requested the video footage be

reviewed and preserved, the record reveals that Chestnut first requested video

surveillance at his UDC hearing held on February 3, 2012.  He made no mention of

requesting video surveillance be preserved when he was twice interviewed before

by the investigating lieutenant.  He further provides no evidence that he requested

the video surveillance prior to the UDC hearing.  Because the initial request was

made on February 3, 2012, and the incident took place on January 6, 2012, video

surveillance was no longer available due to retention limitations, as video surveillance is not maintained more than 10-14 days. (See Doc. 5-1 at 74, Declaration of Heather Crifasi, BOP Special Investigative Services Technician at SCI-Bennettsville). Such a belated request does not rise to the level of a due process violation. See Donahue v. Grondolsky, 398 Fed. Appx. 767, 771 (3d Cir. 2010). While "an inmate's procedural due process rights are violated when a hearing examiner 'fails to view all available evidence to determine its relevance and suitability for use at a disciplinary hearing,' the inmate must first make such a request for review of evidence to preserve it for the disciplinary hearing." Willis v. Zickefoose, No. 11-2077, 2012 WL 2076827, *9 (D.N.J., Jun. 8 2012) citing Burns v. PA Dept. of Corrections, 642 F.3d 163, 174-175 and n. 11 (3d Cir. 2011). There is no evidence that Chestnut requested the video be reviewed prior to the UDC hearing. Chestnut further failed to request that the video be preserved on the two occasions he was interviewed by the investigating lieutenant on January 6, 2012, and January 12, 2012. Consequently, he cannot allege a due process violation by raising the issue after the fact.

Since Chestnut was afforded all of his procedural rights, the only remaining issue is whether there was sufficient evidence to support the decision by the DHO. To the extent Chestnut is alleging the incident report was falsified and there was not enough evidence to find he had committed the prohibited act, the decision of the DHO is entitled to considerable deference by a reviewing court and the decision should be upheld if there is "some evidence" to support the decision.  In Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445 (1985), the Supreme Court held that the "some evidence" standard applies in addressing a state prisoner's due process claim.  Id. at 456-57; see Thompson v. Owens, 889 F.2d 500, 501- 02 (3d Cir. 1989).

The United States Court of Appeals for the Third Circuit observed that the standard found in 28 C.F.R. § 541.17(f) (1986) was more stringent than the "some evidence" standard.  Henderson v. Carlson, 812 F.2d 874, 879 (3d Cir. 1987). The Court concluded that the "substantial evidence" standard in § 541.17(f) (1986) was "clearly higher than any standard that the Constitution imposes on prison disciplinary proceedings."  Id. In 2007, § 541.17(f) was amended and no longer includes the "substantial evidence" standard.  28 C.F.R. § 541.17(f) (2007).  Section 541.17(f) (2007) now requires that a DHO's decision be based on "some facts;"

and, if there is conflicting evidence, the decision is based on "the greater weight of the evidence." Id.

A DHO need not accept what the inmate perceives to be the "best" or most convincing or persuasive set of facts. Rather, under Hill, there need only be "some evidence" to support the disciplinary decision. 472 U.S. at 455-56. This standard is satisfied where "there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. A disciplinary committee's resolution of factual disputes should is not subject to review where the standard in Hill is satisfied. Id.

In this case, the DHO documented in Section V, Specific Evidence Relied on to Support Findings, namely, the written report of the reporting officer and the information contained in the injury assessments of both the staff member and Chestnut. In accordance with Hill, there need only be "some evidence" to support the disciplinary decision. 472 U.S. at 455-56. In this instance, there is "some evidence" to support the decision of the DHO.

Finally, the Court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. § 541.3(b). Petitioner was found guilty of a 200-level, high severity prohibited act. Pursuant to 28 C.F.R. § 541.3(b), the following are some of the sanctions available for 200 level offenses:

B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 50% or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).

B.1 Disallow ordinarily between 25% and 50% (14-27 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).

C. Disciplinary segregation (up to 6 months).

28 C.F.R. § 541.3(b)(Table 1). Thus, the sanctions imposed by the DHO in the present case were consistent with the severity level of the prohibited act and within the maximum available to the DHO. Accordingly, the petition will be denied. A separate Order will be issued.

Dated:   September 12, 2016          /s/ William J. Nealon
                                     **United States District Judge**